IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-91-581-CR





JOHN CRITTENDEN,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT



NO. 91-2720, HONORABLE BOB PERKINS, JUDGE PRESIDING



 




 Appellant John Crittenden was convicted of possession of a controlled substance,
heroin, in an amount less that twenty-eight grams. Tex. Health & Safety Code Ann. § 481.115
(West 1992). After his pretrial motion to suppress evidence was overruled, appellant waived trial
by jury and entered a plea of nolo contendere to the indictment in a bench trial. The trial court
assessed punishment at seven years' imprisonment. The imposition of the sentence was
suspended, and the appellant was placed on probation for seven years subject to certain conditions. 
The punishment was assessed in accordance with a plea bargain.

 Appellant advances four points of error. In the first two points, appellant contends
that the trial court erred in overruling his pretrial motion to suppress the evidence of an illegal,
warrantless search of his person without probable cause or legal justification and in violation of
his rights under the Fourth and Fourteenth Amendments of the United States Constitution and
Article I, Section 9 of the Texas Constitution.

 In his third point of error, appellant contends that the punishment of seven years
probation was excessive and was vindictively imposed because of appellant's stated desire to
appeal the conviction and constituted an improper form of double jeopardy in violation of North
Carolina v. Pearce, 395 U.S. 711 (1969), the Fifth and Fourteenth Amendments to the United
States Constitution, and Article I, Section 14 of the Texas Constitution. In his fourth point of
error, appellant urges that the trial court erred in assessing punishment on an incorrect assumption
of fact that appellant had been involved in "drug dealing." We will affirm the judgment of
conviction.

 At a pretrial hearing, the trial court overruled appellant's motion to suppress
evidence. Duane McNeil, a sergeant with the Austin Police Department, testified that he was on
patrol about 11 p.m. on January 9, 1991, when he received a police dispatch. The dispatcher
requested that McNeil check on a suspicious, white vehicle at 2513 East 11th Street, whose
occupant was "possibly buying drugs," according to the call received by the dispatcher. McNeil
knew that the location given was in a high drug trafficking area.

 McNeil proceeded to the address given and found a white pickup truck parked
there. Officer McNeil pulled his police vehicle along the side of the pickup truck. Appellant was
the lone occupant. Upon inquiry, appellant explained that he "was out of gas." Appellant then
started the pickup truck and drove east on 11th Street. Officer McNeil saw appellant turn his
vehicle onto Northwestern Street without using his turn signal or giving any signal at all, a traffic
violation. At this point, a woman later identified as Della Caldwell, who was standing in the
driveway near where the pickup truck had been parked, told Officer McNeil "that was the
vehicle." McNeil followed appellant's vehicle and stopped him four or five blocks away in the
2500 block of Webberville Road for the traffic offense of failing to give a turn signal. In response
to McNeil's inquiry, appellant stated that he had gone to a store and then had dropped "someone
off." He could not tell the officer the name or location of the store he mentioned nor could he
recall his friend's name. When appellant could not find his car insurance papers, McNeil asked
appellant to step out of the pickup truck. Officer McNeil related that appellant then, upon request,
consented to a search of his person. The officer found a syringe in appellant's left shirt pocket
and two balloons in the watch pocket of appellant's pants. McNeil knew heroin was frequently
packaged in balloons. At this point, McNeil advised Officer Scott Ehlert, a backup officer who
had arrived on the scene, to place appellant under arrest.

 Officer McNeil testified that he intended to give appellant a citation, but he was not
carrying ticket books at the time. McNeil agreed that under most circumstances it would have
been a routine traffic stop except that in the instant situation, the dispatch call, appellant's "out
of gas" story, and Della Caldwell's statement before the stop for the traffic offense all made it a
"kind of research-type situation."

 Officer Ehlert testified that he arrived on the scene and heard Officer McNeil
request and receive appellant's consent to search appellant's person. Ehlert described appellant
as being in full command of his faculties and stated that no threats or guns were used to obtain
the consent. Ehlert observed McNeil conduct the search and verified the finding of the syringe
and the balloons containing a substance later shown to be heroin. Ehlert transported appellant to
the police station.

 Appellant, a fifty-one year old unemployed school teacher with a college degree,
testified that he did not consent to the search of his person. On cross-examination, appellant
admitted that he had acquired the two balloons of heroin that night but he could not recall where. 
He was in East Austin, across town from where he lived, trying to find a grocery store when he
ran out of gas. Someone standing in the street took him somewhere in the neighborhood to get
gasoline for his truck. He was about to leave when Officer McNeil first spoke to him. Appellant
never testified that he did or did not make a turn signal as his vehicle turned onto Northwestern
Street. He did not contest the basis for the traffic stop.

 Appellant claims that the trial court erred in overruling the motion to suppress
because there was no probable cause to detain him for suspicion of criminal activity and that the
stop and arrest for the traffic offense was a pretext arrest. "A pretext arrest occurs when an
individual is validly stopped or arrested for one offense only because law enforcement officials
desire to investigate that individual for a different offense--i.e., an offense for which they do not
have valid legal grounds to stop or arrest." Garcia v. State, 826 S.W.2d 937, 939-40 (Tex. Crim.
App. 1992).

 In Garcia, the Court of Criminal Appeals adopted an "objective" analysis of pretext
arrests: "As long as an actual violation occurs, law enforcement officials are free to enforce the
law and detain a person for that violation, regardless of whatever the usual practices or standards
of the local law enforcement are and regardless of the officer's subjective reasons for the
detention." Garcia, 827 S.W.2d at 944. The appropriate limitation of an officer's discretion
under the Fourth Amendment is the existence of a law and the actual commission of an offense. 
Id.; Byrd v. State, 835 S.W.2d 223, 225 (Tex. App.--Waco 1992, no pet.). There is no indication
in this record that Officer McNeil had any illicit motives in stopping appellant for the traffic
offense. Appellant did not deny that he committed the traffic offense. The stop and detention of
appellant for the traffic offense was reasonable under Fourth Amendment principles. Garcia, 827
S.W.2d at 944; Byrd, 835 S.W.2d at 226.

 Further, an issue of a pretext stop is not raised simply because the police validly
stop a vehicle for a traffic violation when they have a more generalized suspicion that the driver
of the vehicle was involved in a separate crime. Hamilton v. State, 831 S.W.2d 326, 330 (Tex.
Crim. App. 1992); Goodwin v. State, 799 S.W.2d 719, 726 (Tex. Crim. App. 1990). Because
the facts in the instant case do not raise the issue of a pretext arrest, we need not address the
constitutionality of the stop under Article I, Section 9 of the Texas Constitution. Hamilton, 831
S.W.2d at 330.

 Appellant also complains of the search of his person following the traffic stop. A
person may waive his right to be free from a warrantless search by intelligently and knowingly
consenting to the search. Schneckloth v. Bustamente, 412 U.S. 218, 248-50 (1973). Whether
consent is voluntarily or knowingly given is a question of fact which must be determined by
considering the totality of the circumstances. Juarez v. State, 758 S.W.2d 772, 776 (Tex. Crim.
App. 1988). The State must prove by clear and convincing evidence that the consent was freely
and voluntarily given. Johnson v. State, 803 S.W.2d 272, 286-87 (Tex. Crim. App. 1990). 
Although the police do not have to inform the defendant that consent need not be given, failure
to warn constitutes an important factor in determining whether valid consent was given. Meeks
v. State, 692 S.W.2d 504, 510 (Tex. Crim. App. 1985).

 The record does not show that Officer McNeil gave appellant any warnings or
informed him of his right to refuse to give any consent to search. That failure does not vitiate an
otherwise valid consent to search. McNeil and Ehlert both testified that appellant freely gave his
consent, was not intoxicated or under the influence of a controlled substance, and was in full
command of his faculties. The fifty-one-year-old school teacher merely denied he gave consent. 
He agreed, however, that he was not intoxicated or under the influence of drugs. Thus, a fact
issue was raised.

 In a suppression hearing, the trial judge is the sole and exclusive trier-of-fact and
judge of the credibility of the witnesses as well as the weight to be given to their testimony. 
Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). He may accept or reject any or
all of a witness's testimony. Taylor v. State, 604 S.W.2d 175, 177 (Tex. Crim. App. 1980). The
findings of the trial court should not be disturbed absent an abuse of discretion. Cantu v. State,
817 S.W.2d 74, 77 (Tex. Crim. App. 1991). Here, the trial court made an express finding that
the consent to search was freely and voluntarily given by appellant. When the record supports
a finding, as it does in the instant case, that the consent to search was freely and voluntarily given,
the reviewing court will not disturb that finding. Johnson, 803 S.W.2d at 287. The first and
second points of error are overruled.

 Appellant's third point of error states:


 The seven year probated sentence assessed by the court is excessive, as being in
violation of the doctrine of "vindictive punishments" for the defendant's exercise
of his "right of appeal" under Texas law, thus constitutes an improper form of
double jeopardy, in violation of the doctrine of North Carolina v. Pierce, 90 S.Ct.
2092 and is thus improper under Article 1, § 14, Texas Constitution and the Fifth
and Fourteenth Amendments of the United States Constitution.



 This point of error is not easy to decipher. In his brief, appellant tells us that he
is challenging the "increased recommendation of sentence" by the State in its plea bargain offer. 
This challenge is based on varied concepts, including the double jeopardy and the due process
clauses of the federal and state constitutions. Appellant urges that the increased recommendation
of punishment was the result of both judicial and prosecutorial vindictiveness due solely to his
intended exercise of his statutory right of appeal.

 A claim of cumulative error alleging violations of both federal and state
constitutions is a multifarious point of error. Stoker v. State, 788 S.W.2d 1, 18 n.14 (Tex. Crim.
App. 1989), cert. denied, 111 S. Ct. 371 (1990). By combining more than one contention in a
single point of error, an appellant risks rejection on the ground that nothing will be presented for
review. Sterling v. State, 800 S.W.2d 513, 521 (Tex. Crim. App. 1990), cert. denied, 111 S.Ct.
2816 (1991); Thomas v. State, 723 S.W.2d 696, 697 n.2 (Tex. Crim. App. 1986). The Court of
Criminal Appeals has warned attorneys that when briefing constitutional questions, they should
carefully separate federal and state issues into separate grounds and provide substantive analysis
or argument on each separate ground or run the risk of rejection on the basis that the point of
error is multifarious. McCambridge v. State, 712 S.W.2d 499, 502 n.9 (Tex. Crim. App. 1986);
see also Heitman v. State, 815 S.W.2d 681, 690-91 n.23 (Tex. Crim. App. 1991). In fact, it has
been held that claims asserting violations of specific provisions of the Texas Constitution which
provide neither argument nor authority in support of the protection afforded by the state
constitution are inadequate and will not be addressed. Morehead v. State, 807 S.W.2d 577, 579
n.1 (Tex. Crim. App. 1991); DeBlanc v. State, 799 S.W.2d 701, 706 (Tex. Crim. App. 1991).

 In the interest of justice and judicial economy, we will consider appellant's point
of error with regard to his federal claim. Sterling, 800 S.W.2d at 521. Appellant waived trial
by jury and entered a plea of nolo contendere in the bench trial. The trial court duly admonished
appellant as to the consequences of his plea. See Tex. Code Crim. Proc. Ann. art. 26.13 (West
1989). In response to its inquiry, the trial court was informed that there was a plea bargain
agreement but its nature was not revealed. The trial court then admonished appellant that the
court did not have to follow any plea bargain agreement, but that if it did, appellant could not
appeal without the trial court's permission except for matters raised by a pretrial motion.

 At the conclusion of the plea proceedings, after some skirmishing in colloquy, the
parties informed the trial court that the plea bargain agreement was for seven years probation with
certain probationary conditions recommended. During the colloquy at the bench, appellant's
counsel asserted that he had previously reached an agreement for "five years," but that the State
had changed the agreement from five to seven years. The term "probation" was not used in these
particular remarks. There was no objection offered to the plea bargain agreement announced. (1) 
Thereafter, the trial court carefully inquired of each counsel and appellant personally and was
assured that seven years probation was the agreement of the parties. A presentence investigation
report was then ordered.

 At the "sentencing" hearing, the trial court stated that it would accept the plea
bargain agreement. A dispute erupted over the probationary conditions recommended, and in the
colloquy that followed, appellant's counsel resurrected the claim of an earlier plea bargain offer
by the State of five years probation. Without a note of discord, however, the trial court later
assessed punishment in accordance with the agreement.

 In North Carolina v. Pearce, 395 U.S. 711 (1969), the United States Supreme
Court held that the due process clause of the Fourteenth Amendment "requires that [judicial]
vindictiveness against a defendant for having successfully attacked his first conviction must play
no part in the sentence he receives after a new trial." Id. at 725. The same principle was later
applied to prohibit a prosecutor from reindicting a convicted misdemeanant on a felony charge
after the defendant had invoked an appellate remedy, since in this situation there was also a
"realistic likelihood of 'vindictiveness'". Blackledge v. Perry, 417 U.S. 21, 27 (1974).

 In Bordenkircher v. Hayes, 434 U.S. 357, 362 (1978), the Court noted that in
Pearce and Blackledge, involving judicial and prosecutorial vindictiveness, it was dealing with
the State's unilateral imposition of a penalty upon a defendant who had chosen to exercise a legal
right to attack his original conviction. The Court characterized that situation as being "very
different from the give-and-take negotiation common in plea bargaining between the prosecution
and defense, which arguably possess relatively equal bargaining power." Id. at 362. In
Bordenkircher, it was held that the due process clause of the Fourteenth Amendment was not
violated when a state prosecutor carried out a threat made during plea negotiations to reindict the
accused under the state's habitual criminal statute if he did not plead guilty to the offense with
which the accused was originally charged. See also United States v. Goodwin, 457 U.S. 368
(1982) (fact that accused was charged with felony after refusing to plead guilty to misdemeanor
charges did not warrant presumption of prosecutorial vindictiveness in violation of due process).

 Negotiated pleas are an integral and essential part of the system of criminal justice. 
Cruz v. State, 530 S.W.2d 817, 821 (Tex. Crim. App. 1975). In Bordenkircher the Court
accepted plea negotiations as a legitimate process. 434 U.S. at 364-65; see also Goodwin, 457
U.S. at 378. In the give-and-take negotiations of plea bargaining there is no element of
punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer. 
Bordenkircher, 434 U.S. at 362-63. "Plea bargaining flows from 'the mutuality of advantage' to
defendants and prosecutors, each with his own reasons for wanting to avoid trial." Id. at 363; see
also Ex parte Williams, 637 S.W.2d 943, 947 (Tex. Crim. App. 1982), cert. denied, 462 U.S.
1108 (1983).

 A criminal defendant in Texas does not have either a constitutional or statutory
right to plea bargain with a prosecutor for a particular punishment or for a reduced charge. 
Perkins v. Court of Appeals, 738 S.W.2d 276, 282 (Tex. Crim. App. 1987); Morano v. State, 572
S.W.2d 550, 551 (Tex. Crim. App. 1978). The way in which a prosecutor chooses to conduct
plea negotiations are within his discretion. If the prosecutor chooses not to be sufficiently
persuasive in making his offer, or if he makes no offer at all, the defendant is generally without
recourse. Quinones v. State, 592 S.W.2d 933, 941 (Tex. Crim. App.), cert. denied, 449 U.S.
893 (1983); Robinson v. State, 656 S.W.2d 111, 114 (Tex. App.--San Antonio 1983, pet. ref'd).

 Plea bargain agreements are not effective or operative until they are accepted by
the trial court. Williams, 637 S.W.2d at 947; Runyon v. State, 754 S.W.2d 430, 432 (Tex.
App.--Dallas 1988, no pet.). A defendant has no constitutional or contractual right to demand
specific enforcement of the agreement where the plea bargain has not become operative. 
Williams, 637 S.W.2d at 947; Wilson v. State, 689 S.W.2d 311, 314 (Tex. App.--Fort Worth
1985, pet. ref'd). When the State withdraws its plea bargain offer before any agreement becomes
operative, the defendant is placed in the same position as if no offer had been made. DeRusse v.
State, 579 S.W.2d 224, 236 (Tex. Crim. App. 1979). A defendant may also reject the State's
offer or timely withdraw from a plea bargain agreement. See Irving v. State, 475 S.W.2d 777,
778 (Tex. Crim. App. 1972); Salinas v. State, 810 S.W.2d 855, 857-58 (Tex. App.--Corpus
Christi 1991, pet. ref'd). A trial court is not required to consider at trial a prior plea bargain
offered by the State where it was not timely accepted according to its conditions. Easter v. State,
740 S.W.2d 107, 109-110 (Tex. App.--Amarillo 1987, no pet.).

 With this background, we observe that appellant and his counsel told the trial court
they had agreed to the plea bargain agreement of seven years probation. When a defendant agrees
to the terms of a plea bargain agreement, the defendant is deemed to have entered into the
agreement knowingly and voluntarily unless he or she can show otherwise. Williams, 637 S.W.2d
at 947; Anthony v. State, 732 S.W.2d 687, 690 (Tex. App.--Corpus Christi 1987, no pet.).

 Normally, for an issue to be preserved for appeal, there must be a timely objection
which specifically states the legal basis for the objection. Tex. R. App. P. 52(a); Rezac v. State,
782 S.W.2d 869, 870 (Tex. Crim. App. 1990). And the contemporaneous objection rule is
applicable to errors of constitutional magnitude. Little v. State, 758 S.W.2d 551, 563 (Tex. Crim.
App.), cert. denied, 488 U.S. 934 (1988); Aylor v. State, 727 S.W.2d 727, 730 (Tex.
App.--Austin 1987, pet. ref'd).

 At both the plea proceeding and the sentencing hearing, appellant and his counsel
assured the trial court that the plea bargain agreement was for seven years probation. Appellant's
counsel did note that the State had withdrawn an earlier offer, but no objection to the plea bargain
itself was made. No effort was made to establish by sworn testimony the basis or reason for any
change in the State's pretrial offer, if in fact there was one. The unsworn remarks in the running
colloquy were often inconsistent. No motion for new trial was filed.

 Appellant now claims, for the first time, that his double jeopardy and due process
rights were violated during plea negotiations. The basis of the claim is that the State "upped the
ante" by increasing its recommended punishment because appellant had indicated that he intended
to appeal. This contention on appeal does not comport with any trial objection. See Turner v.
State, 805 S.W.2d 423, 431 (Tex. Crim. App.), cert. denied, 112 S. Ct. 202 (1991); Thomas v.
State, 723 S.W.2d 696, 700 (Tex. Crim. App. 1986). In fact, there was no objection at all, and
any claim of a due process violation was thereby waived. Briggs v. State, 789 S.W.2d 918, 924
(Tex. Crim. App. 1990). Moreover, when a trial court follows a recommendation for punishment
devised and agreed upon by the parties, any claimed violation of due process based on judicial
vindictiveness in assessing punishment is utterly spurious. Castleberry v. State, 704 S.W.2d 21,
27 n.9 (Tex. Crim. App. 1984).

 Questions of double jeopardy may, however, be asserted for the first time on
appeal. Jones v. State, 586 S.W.2d 542, 544 (Tex. Crim. App. 1979); Guzman v. State, 732
S.W.2d 683, 685 (Tex. App.--Corpus Christi 1987, no pet.); January v. State, 695 S.W.2d 215,
220 (Tex. App.--Corpus Christi 1985), aff'd., and adopted in part 732 S.W.2d 632 (Tex. Crim.
App. 1987). The constitutional prohibition against double jeopardy consists of three separate
guarantees: (1) it protects against a second prosecution for the same offense after acquittal; (2) it
protects against a second prosecution for the same offense after conviction; and (3) it protects
against multiple punishments for the same offense. See Illinois v. Vitale, 447 U.S. 410, 415
(1989); Ex parte Peterson, 738 S.W.2d 688, 689 (Tex. Crim. App. 1987). None of these
guarantees are involved in the instant case. Even the multiple punishments guarantee is not
involved in any claim that the State changed its mind during plea negotiations and increased its
recommendation as to punishment. Moreover, as earlier noted, appellant never established, as
he claimed, that the sole basis for the increased recommendation was his announced intention to
appeal the ruling on the pretrial motion to suppress evidence. The burden is on the appellant to
see that a sufficient record is presented to show error requiring reversal. Tex. R. App. P. 50(d). 
Appellant's claim of double jeopardy involving judicial and prosecutorial vindictiveness is without
merit. The third point of error is overruled.

 In his last point of error, appellant contends that the trial court erred in assessing
punishment by improperly assuming that appellant had been charged or suspected of "drug
dealing." The trial court assessed punishment in accordance with the plea bargain agreement for
the possession of heroin as charged in the indictment. At the "sentencing" hearing, there was an
informal discussion of the facts of the case. Several times the trial court made reference to "drug
dealing." There was no objection on the basis now urged on appeal. Appellant in his judicial
confession stated that he had purchased what he presumed was heroin before the substance was
found on his person by Officer McNeil. Taken in context, the trial court's references do not show
that the trial court assumed that appellant was charged with a different offense. Appellant
candidly admits that the point of error was solely raised as a "defensive measure" to possibly
counter any argument by the State that the increased recommendation of punishment was legally
justified. The contention is without merit. The fourth point of error is overruled.

 The judgment is affirmed.

 


 John F. Onion, Jr., Justice

[Before Justices Powers, Kidd and Onion*]

Affirmed

Filed: April 14, 1993

[Do Not Publish]





* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1988).
1.   At the plea proceedings, appellant testified and made a judicial confession. On direct
examination, appellant confirmed that he understood that the State had originally offered a plea
bargain of three years probation or five years probation if he appealed, but had altered the offer
to seven years probation if he appealed. Appellant did not profess personal knowledge of the plea
negotiations, but answered "Yes" to his counsel's question about his understanding. The matter
was not further explored.